**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-01569-REB-KMT

ROBERT DURAN,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
STEVEN KOEHLER, in his individual and official capacity,

    Defendants.

## CITY AND COUNTY OF DENVER'S MOTION FOR SUMMARY JUDGMENT

Defendant, **CITY AND COUNTY OF DENVER** (hereinafter "Denver"), by its attorney, Wendy J. Shea, Assistant City Attorney for the Denver City Attorney's Office, pursuant to Fed. R. Civ. P. 56, D.C.COLO.LCivR 56.1A, and this Court's Practice Standards, respectfully moves for an order entering judgment against Plaintiff on the claims he has asserted against Denver and dismissing his Complaint against Denver, in its entirety, with prejudice.

## CERTIFICATION

The undersigned has read and complied with the Practice Standards of this Court concerning the filing of this Motion, including REB Civ. Practice Standards I.E.1, and V.I.1 & 4.

## INTRODUCTION

This case arises out of an incident which occurred in the early morning hours on

March 23, 2009 between Robert Duran ("Duran") and former Denver Deputy Sheriff, Steven Koehler ("Koehler") at the Denver City Jail. Specifically, Duran claims that Koehler used excessive force against him when Duran was in custody as a pretrial detainee. *See Complaint* (Doc. #1), ¶¶ 10-22. An internal affairs investigation was immediately conducted into the incident and on December 12, 2009, after the investigation was completed, and after Koehler had the opportunity to avail himself of the process he was entitled to receive prior to a final disciplinary decision being made, it was determined that Koehler would be terminated. The termination decision was based upon Denver's findings and conclusion that Koehler failed to observe written departmental or agency regulations, policies or rules by using unnecessary force with respect to his handling of inmate Duran and for departing from the truth during his internal affairs interview concerning his use of force against Duran.

Plaintiff contends that Denver is responsible for the alleged constitutional violations Koehler committed under a *Monell* theory of liability. His Complaint states the following two claims for relief against Denver, although the claims do not appear to have any significant difference: (1) failure to properly hire, train, supervise, and/or discipline members of its law enforcement regarding the proper use of physical force on its pretrial detainees;[1] and (2) failure to train and/or supervise "those law enforcement officers that participate in providing safety and security for pretrial detainees," concerning "unlawful seizures by means of excessive force, and failures to intervene." *Complaint* (Doc. #1),

---

[1] Plaintiff's first claim for relief contends that "Defendants" are liable under the Fourth Amendment for the excessive force allegedly used against him. *Complaint* (Doc. #1), ¶¶ 29-35. Of course, Denver cannot be held liable for Koehler's conduct under a theory of respondeat superior. Rather, the basis for holding Denver liable must be premised upon a *Monell* theory of liability.

¶¶ 36, 44-45. Nevertheless, even if it is assumed for the purpose of this Motion that Koehler's conduct violated Duran's constitutional rights, Duran is still unable to prevail on his *Monell* claims against Denver. There is no evidence that a Denver policy or custom was the moving force behind Koehler's alleged constitutional violation or that Denver was deliberatively indifferent to the rights of its inmates concerning the use of force. As a result, judgment should be entered against Duran and his claims against Denver should be dismissed, with prejudice.

## ARGUMENT

A.   Burden of proof and elements:  A governmental entity "may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees." *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). To establish § 1983 municipal liability Duran must show: (1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694).  A municipal policy or custom may be established by any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City,* 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer–Hoetler v. Twin Peaks Charter Acad.,* 602 F.3d 1175, 1189–90 (10th Cir. 2010)) (internal quotations omitted). Under certain limited circumstances, municipal liability may also be imposed based upon a failure to adequately screen an employee prior to hiring, if it is shown that the hiring decision was made with deliberative indifference. *See Bd. of County Commn'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

To prevail on his claim that Koehler's use of excessive force (or an alleged failure to intervene in the use of such force) was the result of Denver's alleged inadequate hiring, failure to train or supervise, and/or failure to discipline, Duran must also prove a third element of deliberative indifference. *City of Canton v. Harris,* 489 U.S. 379, 388-89 (1989) (Only if a plaintiff can show that the conduct of a municipality amounts to deliberate indifference to the rights of persons with whom the police come into contact can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983). "Deliberate indifference" is an exacting standard of fault. *See Brown*, 520 U.S. at 410 (1997).

To satisfy the deliberate indifference standard, Duran must show that Denver had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Carr v. Castle,* 337 F.3d 1221, 1229 (10th Cir.2003); *Connick v. Thompson*, -- U.S. --. 131 S.Ct. 1350, 1360 (2011) ("[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed

deliberately indifferent if the policymakers choose to retain that program."). Such notice is rarely demonstrated by a single incident of deficient action or inaction. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion). In fact, deliberate indifference may be found in the absence of a pattern only in narrow circumstances when the violation of a federal right is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train its employees in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307- 08 (10th Cir. 1998). Thus, proof that a municipal actor disregarded a known or obvious consequence of his action is required. *Id.*

Under the circumstances of this case, regardless of the theory of municipal liability upon which he is relying, Duran cannot establish a Denver policy or custom was the moving force behind Koehler's alleged unconstitutional use of force. The record is also devoid of any evidence to prove the third required element of deliberate indifference. As a result, Duran's *Monell* claims fail as a matter of law.

B.     <u>Undisputed Material Facts</u>: For the purpose of this Motion, the following material facts are undisputed:

1.     On March 22, 2009, Duran was booked into the Pre-Arraignment Detention Facility on an assault charge. *Exhibit 1*, Declaration of Joseph Garcia, ¶ 2; *Complaint*, ¶¶ 10-11. While in the holding cell, Duran was involved in an altercation with an inmate which resulted in a second assault charge. *Complaint*, ¶ 11.

2.      At the time of Duran's booking at the jail, Koehler was working as a Denver Sheriff Deputy at the Pre-Arraignment Facility. *Exhibit 1*, ¶ 2. He had been employed in this position since August 24, 2000. *Id.*

3.      After booking, an incident occurred in the early morning hours of March 23, 2009 between inmate Duran and Koehler during which Koehler used force against inmate Duran. *Id.* at ¶ 3; *Complaint* (Doc. #1) ¶ 12.

4.      At the time of the incident, the Denver Sheriff Department had the following policies, rules and regulations: Elevator (104.00) (*Exhibit 2*); PADF Post Orders –Elevator (General Work Related Conduct or Behavior (300.00 – 300.21) (*Exhibit 3*); Control of Inmate Movement (4050.1E) (*Exhibit 4*); Removal of Dangerous or Belligerent Inmates from a Cell or Holding Area (5010.1D) (*Exhibit 5*); Use of Force (5011.1H) (*Exhibit 6*). *See also Exhibit 1*, ¶¶ 1, 8 (confirming that the attached Exhibits are true and accurate copies).

5.      Prior to the incident, Koehler had received training on the Department's policies, rules and regulations, including, but not limited to, its use of force policy. *Exhibit 1*, ¶ 9.

6.      On March 23, 2009, Major Phil Deeds reported the incident and an internal affairs investigation was initiated. During this time, Koehler was placed on investigatory leave. *Exhibit 1*, ¶ 5.

7.      From the date of his hire until the date of the incident with inmate Koehler, Koehler had not been the subject of an excessive force complaint. *Exhibit 1*, ¶ 6.

8. The internal affairs investigation concluded that Koehler used unnecessary force with respect to his handling of inmate Duran and departed from the truth during his internal affairs interview concerning his use of force against Duran in violation of Denver's policies and rules. *Id.* at ¶ 7. As a result, Koehler was terminated effective December 12, 2009. *Id.*

C. <u>Municipal liability elements that Duran cannot prove:</u>

**1. A Denver policy or custom was the moving force behind Koehler's alleged use of excessive force**

Duran seeks to hold Denver liable for Koehler's alleged use of excessive force. However, as indicated above, a municipality may not be held liable under § 1983 merely because it employs an alleged tortfeasor. *Monell,* 436 U.S. at 694; *Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194, 201 (2001). Rather, to proceed with his *Monell* theory of liability, Duran must show that Koehler's alleged conduct was representative of an unconstitutional official policy or custom of Denver, or was carried out with the approval an official with final policy making authority with respect to the challenged action. *See Norton v. City of Marietta*, 432 F.3d 1145, 1155 (10th Cir. 2005); *see also Milligan-Hitt v. Bd. of Trustees*, 523 F.3d 1219, 1223 (10th Cir. 2008) (a governmental entity is liable only for acts that represent official policy, which includes decisions made by final policymakers). A custom or policy may include a continuing failure to train, supervise, or discipline. *Varela v. Jones*, 746 F.3d 1413, 1418 (10th Cir. 1984).

Not surprisingly, in the first and second claims of his Complaint, Duran fails to identify any specific policy or custom which was allegedly the moving force behind

Koehler's alleged violation of his constitutional rights. *Complaint* (Doc. #1), ¶¶ 10-50. Rather, Duran simply offers conclusory allegations that "Denver failed to properly hire, train, supervise, and/or discipline members of its law enforcement regarding the proper use of physical force on its pretrial detainees" and that "Denver developed and maintained law enforcement related policies, procedures, customs, and/or practices exhibiting or resulting in a deliberative indifference to the Fourth and Fourteenth Amendment protected constitutional rights of persons in the City and County of Denver." *See Complaint* (Doc. #1, ¶¶ 36-38; 43-44). This is insufficient to establish a plausible *Monell* claim.

        a. *Denver's policies comply with Constitutional requirements*

Denver propounded discovery in an attempt to determine the basis for his *Monell* claim. In his deficient discovery responses, Duran contends, without any explanation or factual support, that the "implementation and enforcement" of the following policies were the "moving force" behind Koehler's alleged use of excessive force and the violation of his constitutional rights: Use of Force Policy, Elevator (104.00); PADF Post Orders – Elevator (General Work Related Conduct or Behavior (300.00 – 300.21); Control of Inmate Movement (4050.1E); Removal of Dangerous or Belligerent Inmates from a Cell or Holding Area (5010.1D); and Use of Force (5011.1H). *Exhibit 7*, *Plaintiff's Written Discovery Responses*, *Response to Interrogatory No. 2*, p. 2-3; *Response to Interrogatory No. 7*, p. 6-7; *Response to Interrogatory No. 8*, p. 8-9; *Response to Interrogatory No. 9*, p. 9-10. However, a review of these policies demonstrates that <u>all</u>

comply with constitutional requirements and provide no support for Duran's contention that Denver should be held liable for Koehler's alleged unconstitutional conduct.

For example, Denver's Use of Force policy provides that physical force may only be used to perform legitimate law enforcement or detention related function, and the force used must be "reasonable and appropriate in relation to the threat faced. *Exhibit 6*, p. 1, ¶ 3. Deputies are also cautioned that physical force shall not be used as a punishment, under any circumstances. *Id*. The policy further explains that all officers need to respect human rights and dignity of every individual, explains that officers shall use only that degree of force which is necessary and objectively reasonable under the circumstances, and cautions that use of force that is not reasonable and appropriate will not be tolerated. *Id.* p. 2-3, ¶ 4. The policy includes state statutes and related case law concerning the use of force, contains definitions for the terms "excessive force," "reasonable belief," and "objectively reasonable," sets forth factors for the deputies to consider to determine "objectively reasonable" force options, explains types of resistance, addresses use of force/control options and the duty to report uses of force, discusses various types of force, requires that all officers are appropriately trained in the use of weapons and physical force and directs that:

> [i]t is imperative that officers have an understanding of exactly what authority they do have regarding the use of force in situations where resistance, interference, or threats to the physical well being of another or themselves exists. Officers must also be cognizant of what the limitations are with respect to their authority in use of force situations.

*Id.* at p. 3-18, ¶¶ 5-7, 12-13.

Additional policies have also been implemented for the control of inmate movement, removal of dangerous or belligerent inmates, and transportation of inmates by use of the elevator. *See Exhibits* 2, 3, 4 & 5. These policies also meet constitutional standards. Thus, Duran cannot establish that the implementation and enforcement of these policies and procedures are constitutionally insufficient.

> b. *Duran cannot show the existence of a continuing, persistent, and widespread practice of unconstitutional conduct*

To establish municipal liability based upon a custom, Duran must prove the existence of a continuing, persistent and widespread practice of unconstitutional misconduct by Denver sheriff deputies. *See Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993); *see also Board of County Comm'rs v. Brown*, 520 U.S. 397, 400, 404 (1997); *Hollingsworth v. Hill,* 110 F.3d 733, 742 (10th Cir. 1997). A pattern of misconduct constitutes a custom only when the practice is so well-settled, longstanding, and widespread that it carries the force of law. *Brammer-Hoelter*, 602 F.3d at 1189. To establish the existence of a widespread practice, Duran must present evidence sufficient to demonstrate not only that Denver violated his constitutional rights, but also that Denver has violated the constitutional rights of other people <u>under similar circumstances</u>. *See Carney v. City and County of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008); *Watson v. Kansas City*, 547 F.2d 690, 695 (10th Cir. 1988). The mere fact that Denver may have previously received complaints against other sheriff deputies concerning the use of excessive force does not, by itself, demonstrate the existence of a widespread practice sufficient to impose municipal liability. *See Strauss v. City of Chicago,* 760 F.2d 765, 769 (7th Cir.1985) (The "mere recitation of the number of

complaints filed [does not] suffice to prove a policy or custom."); *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (evidence of number of complaints insufficient to prove custom).

The record in this case is devoid of any evidence which would even arguably suggest that Denver has a continuing, persistent, and widespread practice which permits its sheriff deputies to engage in excessive force toward inmates. There is no evidence that its officers are not adequately trained or supervised with respect to the use of force or that sheriff deputies have not been disciplined when it was determined that inappropriate force was used toward an inmate. *See, e.g., Brown v. Gray*, 227 F.3d 1278, 1286 (10th Cir. 2000) (to prevail on failure to train claim, plaintiff must show that the training given was, in fact, inadequate); *City of Canton*, 489 U.S. at 391 ("adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable"); *Tuttle,* 471 U.S. at 821 (liability cannot be inferred that single unusually excessive use of force by "bad apple" was attributable to inadequate training or supervision amounting to deliberate indifference). In fact, the circumstances of this case specifically demonstrate otherwise, as Koehler received training concerning appropriate uses of force toward inmates, he had not received prior force complaints, a supervisor immediately reported the incident to internal affairs, Koehler was placed on administrative leave during the internal affairs investigation, and he was terminated when Denver determined that the force he used against Duran was inappropriate and in violation of Denver's policies and rules. *See Exhibit 1*, ¶¶ 5-9.

Plaintiff has not and cannot point to any official policy or custom adopted or implemented by Denver which led to the constitutional violation he alleges in his complaint. Consequently, because Denver cannot be held liable for Koehler's actions under a theory of *respondeat superior*, his municipal liability claims against Denver fails as a matter of law.

    c. *No final policy makers violated Duran's constitutional rights or ratified the unconstitutional conduct at issue in this case*

Under the circumstances of this case, Duran is also unable to identify any particular official with final policy making authority who violated his constitutional rights as required to demonstrate municipal liability under *Monell*. *See Milligan-Hitt*, 523 F.3d at 1223 (under § 1983 a governmental entity is liable only for acts that represent official policy, which includes decisions made by final policymakers).

It also appears that Duran may be attempting to establish municipal liability based upon a theory of ratification by making a veiled, conclusory allegation in his Complaint that "Denver maintains policies, procedures, customs, and/or practices that tacitly or explicitly authorize unlawful seizures by means of excessive force and failures to intervene." *Complaint* (Doc. #1) ¶ 44. However, a municipality cannot be found liable under a ratification theory unless a final decisionmaker ratifies an employee's specific unconstitutional actions, as well as the basis for the actions. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010). No such showing can be made under the circumstances of this case. Not only is there absolutely no evidence of inadequate hiring, training, supervision, or discipline, but Denver terminated Koehler as a result of the force he used toward Duran. The decision to terminate Koehler after the completion

of the internal affairs investigation confirms that Denver does not tacitly or explicitly ratify the use of inappropriate force by its officers.

        d.  *Evidence sufficient to establish causation is also lacking*

It is not enough for Duran to merely identify conduct attributable to Denver; rather, he must also demonstrate that through its deliberate conduct, Denver was the "direct cause" or the "moving force" behind the constitutional injury alleged. *See Tuttle*, 471 U.S. at 820; *Brown*, 520 U.S. at 404; *Hollingsworth*, 110 F.3d at 745. However, Duran is unable to identify any instance of an alleged constitutional violation or any other incident "tending to make it more likely that [his] own injury flows from [Denver's] action, rather than from some other intervening cause," and thus, there can be no notice to Denver that the alleged constitutional violation by Koehler was a highly predictable consequence of some custom or policy. *See Brown*, 520 U.S. at 408-09.

As noted above, generally, "proof of a single incident of unconstitutional activity is not sufficient to impose [municipal] liability." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Without the ability to show any pattern to demonstrate the "obviousness" that a constitutional violation would occur, Duran cannot meet his heavy burden with respect to causation simply because he claims Koehler used excessive force against him. *See Monell*, 436 U.S. at 694; *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). For all of these reasons, Denver is entitled to summary judgment.

    **2.**    **Deliberate indifference**

Duran's municipal liability claims also fail because he cannot show Denver was deliberatively indifferent to the constitutional rights of people with whom its sheriff

deputies come into contact.

                a.      *Duran has no evidence to support his claim of inadequate hiring*

As noted above, municipal liability may be imposed based upon a failure to adequately screen an employee prior to hiring, if it is shown that the hiring decision was made with deliberative indifference. *See Brown*, 520 U.S. at 404; *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998). However, because the danger of holding a municipality liable only on a theory of vicarious liability is great, there must be a showing of a strong connection between the background of the particular officer and the specific constitutional violation. *Brown*, 520 U.S. at 415. Less than careful screening of an applicant, without more, is not sufficient; rather, the plaintiff must also show that the particular officer was highly likely to inflict the particular injury the plaintiff suffered. *Id.* Establishing municipal liability in the hiring context requires a finding that the specific officer "was highly likely to inflict the particular injury suffered by the plaintiff." *Id.* at 412.

With respect to this theory, Duran's Complaint merely contains a conclusory allegation that Denver is liable for failing to "properly hire." *Complaint* (Doc. #1), ¶ 36. No factual support for this claim was articulated in the Complaint or Duran's discovery responses. *See Complaint* (Doc. #1); *Exhibit* 7, p. 2-3, ¶ 2; p. 5-6; ¶ 6; p. 11-12, ¶ 10. Moreover, there is absolutely no evidence that anything from Koehler's background should have been investigated by Denver prior to his hiring or should have precluded his hiring as a sheriff deputy. There is also no evidence for Duran to rely upon as proof that any conduct by Koehler prior to his employment with Denver had any connection to

the force Koehler used against him. Thus, Duran's attempt to impose municipal liability against Denver based upon a claim of improper hiring fails as a matter of law.

    b.  *Denver's training and supervision of Koehler was appropriate[2]*

A municipality may be liable for failing to train or supervise its employees in "limited circumstances." *City of Canton,* 489 U.S. at 387. In fact, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, -- U.S. --. 131 S.Ct. 1350, 1359 (2011); *see also Tuttle,* 471 U.S. at 822–23 (a "policy" of "inadequate training" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."). Further, without more, evidence that an officer merely violated a policy is not sufficient to show inadequate training or supervision. *See, e.g., Barney,* 143 F.3d at 1307; Tuttle, 471 U.S. at 821 (liability cannot be inferred that single unusually excessive use of force by "bad apple" was attributable to inadequate training or supervision amounting to deliberate indifference); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (§ 1983 "does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation.")

As set forth above, Duran has absolutely no evidence that Denver's use of force training protocols or the supervision provided for its sheriff deputies were in any way inadequate or deficient. Moreover, there is also no evidence that Denver was presented with a pattern of substantially similar violations which would have been sufficient to

---

[2] "The failures to 'train' or 'supervise' are so similar that they are discussed together and require the same elements." *Rehberg .v. City of Pueblo*, No. 10-cv-00261-LTB-KLM 2012 WL 1326575 at *4 (Apr. 17 2012) (citing to *Bryson,* 627 F.3d at 788; *Brammer–Hoelter,* 602 F.3d at 1189–90).

indicate the need for additional training and supervision of its deputies concerning the use of appropriate force against an inmate. The record is also devoid of any evidence that Denver was on notice of the need for any additional training or supervision of its deputies with respect to uses of force, and Duran has not designated a police training or policy expert to opine on the alleged inadequacies of Denver's training and supervision of its deputies at the jail.

Duran also cannot present any facts which even arguably demonstrate that the incident could have been avoided with different or better training or supervision. Koehler was trained in various relevant policies, including use of force, elevator operation, control of inmate movement, and removal of dangerous or belligerent inmates, he did not even have a prior history of complaints of inappropriate uses of force, he was placed on administrative leave during the internal affairs investigation, and Denver terminated as a result of his conduct. *Exhibit 1*, ¶ 5-9. For all of these reasons, Duran cannot establish the necessary element of deliberative indifference with respect to his theory that Denver failed to adequately train or supervise its deputies regarding uses of force.

        c.     *Duran's failure to discipline theory also fails as a matter of law*

There is no evidence to demonstrate that Koehler was involved in any prior incident from which Denver could somehow be liable for not disciplining him. *Exhibit 1*, ¶ 6. In fact, even Duran acknowledges in his Complaint that as a result of the incident, Denver disciplined Koehler by terminating his employment. *Complaint* (Doc. #1), ¶ 27.

As such, Duran's failure to discipline theory is without merit and also fails to provide a basis to impose municipal liability upon Denver as a result of Koehler's alleged actions.

## **CONCLUSION**

For all of the reasons set forth above, Denver respectfully requests that this Court enter summary judgment in Denver's favor and dismiss Plaintiff's Complaint against it, with prejudice.

**DATED** this 16th day of July, 2012.

Respectfully submitted,

WENDY J. SHEA
Assistant City Attorney


By:  *s/ Wendy Shea*
Wendy J. Shea
Office of the City Attorney, Litigation Section
201 W. Colfax Avenue, Dept. 1108
Denver, CO 80202-5332
Telephone:  (720) 913-3112
Facsimile:   (720) 913-3182
E-mail:  wendy.shea@denvergov.org
*Attorney for Defendant City and County of Denver*

## **CERTIFICATE OF SERVICE**

      I certify that on this 16th day of July, 2012, I electronically filed the foregoing **CITY AND COUNTY OF DENVER'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David A. Lane, Esq.
Lauren L. Fontana, Esq.
Email: dlane@kln-law.com
Email: lfontana@kln-law.com

Brian R. Reynolds, Esq.
Email: breynolds@brunolawyers.com

                                    *s/ Wendy Shea*
                                Office of the City Attorney